# EXHIBIT A

Plaintiffs Pro Se

Donald P. Lariviere & Doris G.Lariviere,

# 3 Devotion Avenue

Sanford, Maine 04073

## IN THE SUPERIOR COURT OF YORK COUNTY
## STATE OF MAINE

Donald P. Lariviere &
Doris G. Lariviere,
      **Plaintiffs**

V.

The Bank of New York as Trustee,
Litton Loan Servicing, LP,
Bank of America,
Mortgage Electronic Registration Systems, Inc. (MERS),
JOHN AND JANE DOES I through XX, inclusive
      Defendants

| CIVIL ACTION NO.: |
| --- |
| 1. CIVIL CONSPIRACY TO COMMIT FRAUD AND WRONGFUL FORECLOSE |
| 2. TO PRODUCE ORIGINAL NOTE |
| 3. PERMANENT INJUNCTION |
| 4. FRAUDULENT MISREPRESENTATION |
| 5. BREACH OF FIDUCIARY DUTY |
| 6. UNJUST ENRICHMENT |
| 7. CIVIL CONSPIRACY |
| 8. COMPLAINT TO QUIET TITLE TO REAL PROPERTY |
| 9. USURY and FRAUD |
| 10. ECONOMIC DURESS |

## COMPLAINT

COMES NOW YOUR Plaintiffs, Donald P. Lariviere & Doris G. Lariviere, to sue the defendants for Civil conspiracy to commit fraud and wrongful foreclose; To produce Original Note; Permanent Injunction; Fraudulent Misrepresentation; Breach of Fiduciary Duty; Unjust Enrichment; Civil Conspiracy; Complaint to Quiet Title to Real Property; Usury and Fraud and Economic Duress in that they have knowingly foreclosed without being the owner of the original note.

1

Plaintiffs request a temporary injunction/restraining order for stopping the foreclosure proceeding of the property in question: 3 Devotion Avenue Sanford, ME 04073, until a full hearing can be held to consider permanent injunctive relief.  In support of this action the Plaintiffs respectfully shows and states:

### Parties and Jurisdiction

1. **Donald P.Lariviere and Doris G. Lariviere( hereinafter Borrower/ Borrowers/ Plaintiff)** of 3 Devotion Avenue are the Plaintiffs in this action.

2. **First Residential Mortgage Network Inc** hereinafter "LENDER" is the company to whom a Mortgage "DEED" was granted by the Borrowers.  Because the DEED has been sold/transferred through a number of parties without proper recordation in the county records or notice to the Borrowers, the Plaintiffs and Borrowers is unsure who currently holds the DEED and are unable to determine who should be contacted as to the default status or payoff amount on that DEED.

3. Defendant MERS is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc. and is acting solely as the nominee for Lender and is the grantee under the Security Instrument.

4. Defendant Litton Loan Servicing, LP is the foreclosing lender who intends to foreclose on the property without having the actual authority.

5. Defendant Bank of America is the creditor who has carried the foreclosure proceeding that was wrongfully initiated by Bank of New York.

6. There are a number of potential Defendants whose names, locations, and capacities are not yet known or understood by the Plaintiffs.  As such the Plaintiffs has sued by fictitious names JOHN AND JANE DOES I through XX, inclusive.  The Plaintiffs will amend this complaint to allege their true names and capacities when such is ascertained.

### NATURE OF THE ACTION

7. This case is a clear example Defendants' egregious, ongoing and far reaching fraudulent schemes for improper use of the Borrowers' identity, negligent and/or intentional misrepresentation of appraised fair market value, fraud by inducement, fraud in execution,

2

usury, and a number of breaches in contractual and fiduciary obligations have occurred by those acting as Mortgagee, Nominee on the Mortgage Deed,

8. The participants in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of the Plaintiffs' real estate asset and other investors in certain trust funds.

9. In addition to seeking compensatory, consequential and other damages, Plaintiffs seeks declaratory relief as to what (if any) party, entity or individual or group thereof is the owner of the Mortgage DEED executed at the time of the loan closing, and whether the Mortgage Deed secures any obligation of the Borrowers against the Trust property. The Plaintiffs further moves for a Mandatory Injunction requiring reconveyance of the subject property to the Plaintiffs or, in the alternative a Final Judgment granting Plaintiffs Quiet Title of the subject property.

10. The Borrowers is the nominal payor on the actual mortgage DEED. The Loan Seller is a financial institution that was paid a fee to pose as a residential mortgage lender, when in fact the source of loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties whose identities and receipt of fees and profits were withheld from the Borrowers at Closing and these numerous transfers of the NOTE have been accomplished without notice to the Borrowers. The present case is a civil action brought with respect to the Subject Property the Borrowers was granted a secured loan bearing number 19099316 from First Residential Mortgage Network which was sold to Countrywide (now owned by Bank of America) and then to     Litton Loan servicing, LP

11. Unknown to Borrowers, the Loan Seller, acting as principal in its relationships with the "independent appraiser," the "Mortgage Broker" and the "mortgage originator" induced the Borrowers into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. The Loan Seller posed as a conventional mortgage lender thus leading Borrowers to reasonably believe that the Loan Seller, the Mortgage Broker, and the Loan Originator had an interest in the success (repayment of the loan) of the transaction that Borrowers was executing at the time of the "closing" of the subject loan transaction. The Borrowers did not and could not know that the loan they were signing was not necessarily in their best interests but was the loan that was in the Originator's best interest without regard to whether the Borrowers could repay the loan. These types of actions are labeled "predatory lending" by Federal Law and can, when proven, invalidate the security interest or even the debt.

12. In fact, neither the Loan Seller, Mortgage Broker, Appraiser, Loan Originator, Title Agent, Closing Attorney and nor the Loan Servicer had any financial stake (i.e., liability) in the lending transaction. Because they had no interest other than obtaining Borrowers' signature on a "loan" without regard to the welfare of the Borrowers. This motive getting the Borrowers to sign the most profitable loan is contrary to representations and assurances from the conspiring participants which were made to the Borrowers. All through the process, the Borrowers were assured that this transaction was in their best interests and that the participants were looking out for the Borrowers' financial well-being. When in fact, all the elements of the loan transaction were fashioned for the benefit of the Mortgage Originator, Loan Seller, Appraiser and other participating conspirators in this scheme.

13. The Borrowers were current on the payments to the actual holder of the Note because of the securitization process or in the alternative that the Lender is responsible for her alleged default. The Lender promulgated a scheme which, for any other individual, would be illegal loan flipping. The Lender sitting at the closing table had no money to lend. The Note was a sham and the Security Deed was pledged to secure nothing. The Lender, unknowingly to the Borrowers, solicited this Note without having money to lend, and then would in turn sell this deed to an unknown entity who would fund the deal. This scheme was never revealed to the Borrowers. As a result, the Borrowers has never known who was the real Lender, has never had contact with the real Lender, and cannot give Notice to the real lender by means outlined in the Mortgage Deed because it requires notice be served upon a lender who is unknown to the Borrowers from the beginning until now.

14. The Borrowers relied upon the due diligence of the apparent "Lender/Mortgage Broker" (i.e., actually the Loan Seller) in executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing. The loan was chosen for the benefit of the "lending" entities and not for that of the Borrowers even though they were continually assured that this was sound financial advice.

**HOEPA, TILA, and RESPA Violations**

15. The Lender, by and through their agents during the loan process and closing did not follow existing law regulating residential mortgage transactions to wit: HOEPA, RESPA, TILA.

16. Prior to the closing, the Lender, and/or undisclosed third parties failed to provide to the Borrowers with the preliminary disclosures required by the Truth-In- Lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide the preliminary disclosures required by the Real Estate Settlement

4

Procedures Act ("RESPA") pursuant to 24 FR sec. 3500.6 and 35007, otherwise known as the GFE.

17. The Lender, and/or undisclosed third parties also intentionally failed and/or refused to provide Borrowers with various disclosures which would indicate to the Borrowers that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TIL showed a "fixed rate" schedule of payments, but did not provide the proper disclosures of the actual contractually-due amounts and rates.

18. Defendants failed and/or refused to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction. As Defendants failed to provide an accurate GFE or Itemization of Amount Financed ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP", which is required to be disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of the loan.

19. Defendants allowed an $18,000 charge outside of closing which is not reflected on the TILA disclosure and the overall TILA finance charge figure is too low.

20. As a direct and proximate result of these failures to disclose as required by the Truth-In-Lending Act, Defendants received a YSP in a substantial amount of without preliminary disclosure, which is a per se violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii). The YSP raised the interest rate, which was completely unknown to or approved by the Plaintiffs, as they did not received the required GFE or IOAF.

21. In addition, the completely undisclosed YSP was not disclosed by Defendants in their broker contract, which contract was blank in the area as to fees to be paid to Defendants. This is an illegal kickback in violation of 12 USC sec. 2617 as well as State law which gives rise to all damages claims for all combined broker fees, costs, and attorneys' fees.

22. The Amount Financed within the TIL is also understated which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1612(u), as the Amount Financed must be completely accurate with no tolerance.

23. Defendants were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Borrowers received all legally required disclosures pursuant to the Truth-In-Lending Act and RESPA both before and after the closing.

24.  The Borrowers, not being in the consumer lending, mortgage brokers, or in the residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and Regulations.

25.  At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1612(f) and Regulation Z sec. 226.2 (a)(17).

26.  At the closing of the subject "loan transaction", Borrowers executed Mortgage Notes and Security Agreements in favor of Defendants as aforesaid. These transactions designated by Defendants as a Loan, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants.

27.  As part of the consumer credit transaction the subject of the closing, Defendants retained a security interest in the subject property which was the Borrowers' principal residential dwelling.

**RESPA Letters**

28.  Plaintiffs has repeatedly requested and demanded compliance with Qualified Written Requests (a copy of which is attached here with marked Exhibit-"A") under Real Estate Settlement Procedures Act, the Truth in Lending Act, and other applicable state and Federal Statutes which the Defendants have either ignored or refused to acknowledge or refused to resolve, copies of which demands are attached hereto as Exhibits, and incorporated herein. Plaintiffs have also requested that the loan transaction be rescinded in its entirety under the three day rule, the three year limitation and under the usury and general claims theories and causes of action. A Rescission Letter dated 04/24/2009 is attached herewith as Exhibit- B.

29. More than a year has passed since service of RESPA Letters, but the defendants have failed to provide any details relating to the transaction involved in the property.

30. Plaintiffs are left in the position of being in an adversary proceeding with ghosts. While these Defendants have informally offered or considered providing indemnification for any third party claims, the fact remains that any relief awarded these defendants, any standing allowed to these defendants would expose the Plaintiffs to multiple claims and suits from an unknown number of parties and entities that all claim, possibly correctly, to the holders in due course. Any grant of ac certificate of title to an entity other than Plaintiffs or the nominal mortgagee creates an incurable defect in title.

6

31. The Plaintiffs have procured evidence relating to any assignment of Deed and Other relevant documents as filed in the Register of Deeds.

### Who owns the Note and Deed?

32. Lenders, or holders of mortgages or Security Deeds, are allowed to and often do assign/sell mortgages and Deeds to other lenders, or third parties. When this is done the assignee (person who received the assignment) steps into the place of the original lender or assignor.

33. First Residential Mortgage Network Inc. was named as the Lender on the subject Mortgage Deed and MERS Inc. was the beneficiary under the mortgage terms allegedly securing the performance under the subject note. In accordance with State law, the Deed and terms of security were recorded in the county records.

34. Bank of New York as Trustee, filed with the District Court a Civil Action seeking a judgment of foreclosure filed on 10 September 2007 attached herewith as Exhibit-'C'

35. Notice of Default was served by Bank of New York upon Plaintiffs as on May 29,2007. Interestingly the Deed of assignment was made as on August 21,2007 between MERS Inc. and Bank of New York. It clearly proves that the Foreclosing Lender had no right vested upon him to initiate a fraudulent foreclosure, as they had no vested interest in the Deed and every act done by them prior to assignment shall be construed as fraud. Assignment of deed attached herewith as Exhibit –'D'.

36. Can MERS act both as an agent and principle in the deed? Does this mean that MERS really *was* the mortgagee, even though it didn't lend money or have any rights to loan repayments? "MERS involvement in the mortgage lending industry suggests that MERS is not a mortgagee with respect to any loan registered on its database. A mortgagee is simply the party to whom a parcel of real estate is mortgaged. Or, as Black's Law Dictionary explains, a "mortgagee" is "one to whom property is mortgaged; the mortgage-creditor, or lender. -- Also termed as *mortgage-holder*."

37. As MERS Inc. was a nominee how is it that he can transfer or assign deed to any person he likes. A transfer must be made by the Actual Lender and MERS Inc. is not a lender and has no legal standing to assign deed or initiate foreclosure proceeding. MERS is not the party to whom home was mortgaged for at least three fundamental economic reasons.

      1) MERS does not fund any loans. No money coming out of a MERS deposit account is tendered as loan principal to homeowners.

7

2) No homeowners promise to pay MERS any money. To this effect, MERS is never identified as the payee in a promissory note and MERS is never entitled to receive any monthly payments from the mortgagor.

3) MERS is never entitled to receive the proceeds of a foreclosure sale. Instead, these funds go to the actual Lender who owns the note

**Landmark Nat'l Bank v. Kessler 261 Kansas 618 (2009)** finding that a nominee could only hold "bare legal title for the benefit of another" and the court quoted the Missouri Supreme Court in finding that, "[B]ecause MERS was not the original holder of the promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective. "MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." 284 S.W.3d at 624; see also In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009) (standard mortgage note language does not expressly or implicitly authorize MERS to transfer the note); In re Vargas, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008).

38. Further the Plaintiffs were not provided with any notices regarding assignment of the deed despite several requests. The covenants as agreed by the parties to the mortgage did said that no prior notice will be given to the Borrowers. But it nowhere mentioned that no notice will be given even after of sale or assignment of deed. Copy of Mortgage is attached herewith as **Exhibit-'E'**.

39. The Plaintiffs does not know who shall be treated as the Actual Lender and demands that actual "note" must be produced in the court so that it may be clearer that the foreclosure has been undertaken by Actual Lender and not a party with an inferior copy of the Note by mistake or fraud.

The Security deed contains a provision under Transfer of Rights in the property; that states that "The note or a partial interest in the note can be sold one or more times without prior notice to Borrowers." But there was no intimation to the Borrowers regarding sale of the "note" after such sale. The Clause does not allow that no information will be given to the Borrowers regarding any sale. The Defendants have shipped the Note around without notice to the Borrowers and more importantly without wet signatures on the Note or successive recordings in the County office of Records and Deeds. As a result the Borrowers is left with no means by which to ascertain who has the right to declare the Note in Default and execute the Security Deed. This is clearly a fraudulent scheme to keep the Borrowers unaware of the facts. The Plaintiffs must know the owner of the note in order to properly pay and account

8

for that note. Since there are no recordations of those Note transfers, the true holder of the Note must come forth with the Original Note with an unbroken string of wet signatures to show rightful ownership.

40. Plaintiffs allege that the Defendants have acted in concert to commit constructive fraud against the Borrowers and as a result of their fraud they threaten their rightful ownership of the property. Each of the Defendants were engaged in an artifice or scheme whose purpose was to execute loans secured by real property in order to make commissions, kick-backs, undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction. Plaintiffs alleges that each Defendant has represented to the Borrowers and to third parties that they were the owner of the Mortgage Deed and Note as either the Trustee or the Beneficiary regarding Plaintiffs' real property. Based upon this representation they caused a Notice of Default to be issued to the Borrowers without disclosing their true role, and thereafter a notice of intent to foreclose was published. Possession of the Note is not incidental to the right to foreclose, it is absolutely necessary.

41. Thus, no bank or other financial institution actually performing under the standards, rules and regulations governing such institutions was the "lender" which is the basis for Plaintiffs' cause of action for usury, fraud, and wrongful foreclosure to wit: that the inflated appraisal added an undisclosed cost to the loan which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan" exceeds the limits set by the State legislature for usury and is not subject to exemption because the presence of a financial institution in the transaction was a ruse in which the form of the transaction covered over and mislead the Borrowers as to the real parties in interest and the fees generated by the production of the subject "loan transaction."

42. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Borrowers and have only recently been discovered by Borrowers through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and Exchange Commission which disclose the normal manner of operating this fraudulent scheme.

43. The Foreclosing Lender is responsible for the bad acts of its predecessors. It is not a defense on the part of the Foreclosing Lender to say: "We may be holding an asset created by the predatory lending actions of the original lender and broker but we are not responsible for their actions since we were not party to those actions." They cannot take a flawed asset and enjoy the benefit of it as if it is not flawed. Willful ignorance does not relieve them of the fact that they are holding an asset that was created in an atmosphere of fraud, deceit, and recklessness. When the broker induces or causes the Borrowers to take a loan because it is easy for the broker and not better for the Borrowers then the Borrowers has been duped.

9

When the lender makes a loan where no income has been verified they are WILLFULLY IGNORANT of the Borrowers' ability to pay for the loan and cannot then hold the Borrowers responsible for taking a bad loan that they do not fully understand. Loan documents are a contract of adhesion and therefore the lender bears the primary responsibility of knowing that the loan is a good and payable loan. Further the foreclosing lender can not ignore the break in the chain of collateral that supposedly secures the NOTE. **The purchaser of a bad loan is the OWNER of a bad loan.**

## GENERAL ALLEGATIONS

44. The end result of the false and misleading representations and material omissions of Defendants as to the true nature of the mortgage loan actually being processed, which the said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Borrowers' stated intentions and directions to said Defendants at the time of original application for the loan, fraudulently caused Borrowers to execute predatory loan documents.

45. At no time whatsoever did Defendants ever advise Borrowers (nor, as far as Borrowers can determine, any "investor" in certificates of mortgage-backed securities) that: a) The mortgage loan being processed was not in their best interest; b) the terms of the mortgage loan being processed were less favorable than the fixed-rate loan, which Defendants previously advised Borrowers that they qualified for; c) that the mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Borrowers was providing cover for Defendants' illegal activities.

46. That Borrowers would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether they met their loan obligations once the true lender or true holder(s) in due course appeared;

47. That the originating "lender", and/or undisclosed third parties, had no intention of retaining ownership interest in the mortgage loan or fully servicing same and in fact may have and probably had already pre-sold the loan, prior to closing, to a third party mortgage aggregator pursuant to previously executed documentation Assumption and Assignment Agreement, Pooling Services Agreement, etc. all executed prior to Borrowers' "loan Closing."

10

48.  That the mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators and investment bankers for the ultimate purpose of bundling the Borrowers' mortgage with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed Securities Certificates, created the same year as the closing);

49.  That the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

50.  That in connection with the multiple down line resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the Note may make "pay-downs" against the Note which may affect the true amount owed by the Borrowers on the Note;

51.  That a successive assignee or purchaser of the Note and Mortgage may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Borrowers' prior notice and consent;

52.  As a result of the closing and in connection therewith, Defendants placed the Borrowers into a pool of a sub-prime adjustable rate mortgage programs, with Defendants intentionally misleading Borrowers and the other Borrowers and engaging in material omissions by failing to disclose to v and other Borrowers the fact that the nature of the mortgage loan applications had been materially changed without Borrowers' knowledge or consent, and that Borrowers was being placed into a pool where the usual loan was an adjustable rate mortgage program despite Borrowers not being fully qualified for such a program.

53.  Defendants engaged in a pattern and practice of defrauding Borrowers in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees.

54.  Defendants had actual knowledge that the Borrowers' accounts were not accurate but that Borrowers' would make further payments based on Defendants' inaccurate accounts.

55.  Borrowers made payments based on the improper, inaccurate, and fraudulent representations as to Borrowers' accounts.

56. As a direct and proximate result of the actions of the Defendants set forth above, Borrowers overpaid in interest.

57. Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

58. Defendants' violations were all material in nature under the Truth-In-Lending Act.

59. Said violations, in addition to the fact that Plaintiffs did not properly receive Notices of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a legal basis for and legally extend Plaintiffs' right to exercise the remedy of rescission.

60. Defendants assigned or attempted to assign the Note and mortgage to parties who did not take these instruments in good faith or without notice that the instruments were invalid or that Borrowers had a claim in recoupment. Pursuant to ORC sec. 1303.32(A)(2)(b)(c) and (f), Defendants are not a holder in due course and is thus liable to Borrowers, individually, jointly and severally.

61. On information and belief and given that the consumer credit transaction was an intertemporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Borrowers out of the proceeds of the loan; acted in concert to wrongfully deprive the Borrowers of their residence; acted in concert and conspiracy to essentially steal the Borrowers' home and/or convert the Plaintiffs' subject property without providing Borrowers reasonably equivalent value in exchange; and conducted an illegal enterprise within the meaning of the RICO statute. On information and belief and given the volume of residential loan transactions solicited and processed by the Defendants, the Defendants have engaged in two or more instances of racketeering activity involving different victims but utilizing the same method, means, mode, operation, and enterprise with the same intended result.


### CLAIMS FOR RELIEF


### COUNT I


### CIVIL CONSPIRACY TO COMMIT FRAUD AND WRONGFUL FORECLOSE

62. Plaintiffs reaffirm and reallege paragraphs 1-61 above as if set forth more fully herein below.

63. In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Borrowers and ultimately the Plaintiffs.

64. Defendants agreed between and among themselves to engage in the conspiracy to defraud the homeowner by selling and reselling the deed and purportedly the Note for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs and the Borrowers. The Defendants know that they have long since misplaced or lost the Note and yet they have taken actions to foreclose on the property for which they are owed no money. This action constitutes conspiracy to defraud.

65. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Borrowers and the possession of Plaintiffs' Property.

66. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiffs has suffered damages.

67. Plaintiffs thus demand that the foreclosure/Dispossessory be set aside and that the Defendants pay the Plaintiffs an award of actual, compensatory, and punitive damages.

## COUNT II

### TO PRODUCE ORIGINAL NOTE

68. Plaintiffs reaffirms and realleges the above paragraphs 1-61 hereinabove as if set forth more fully hereinbelow.

69. Since there was no proper recording relating to sale of the "Note," it is difficult to believe that the foreclosing lender is the actual lender. The Borrowers has never contracted to pay the Servicer a penny. While the Security Deed has been purportedly assigned around, there is no evidence that the Note has gone with it. If the Borrowers owe anyone it is the original lender.

13

70. The Defendants have failed to deliver any notices relating to sale and therefore the Plaintiffs requests for proper notice relating to sale of note and for production of actual "note" in the court so that it may be proved that the foreclosing lender is the actual lender and has standing to foreclose.

71. The Plaintiffs denies that the Borrowers owes the Lender, MERS, or the Servicer any money therefore the Note is not in default and the foreclosure is illegitimate.

**COUNT III**

**PERMANENT INJUNCTION**

72. Plaintiffs reaffirm and reallege the above paragraphs 1-61   hereinabove as if set forth more fully hereinbelow.

73. The defendant have failed to answer the queries as asked by the Plaintiffs through QWR( Qualified Written Requests). The 60 days period has passed since the service and still the answer is pending. It clearly implies that the property in dispute is illegally transferred to the investors who are hiding behind the foreclosing lender .

74. The defendants also tried to validate the proceeding of Defendant Bank of New York when they continued with their illegal procedure of initiating foreclosure, without being properly assigned the property.

They had no legal standing as to assign or to foreclose on the property of the Plaintiffs and they currently have illegitimate standing to foreclose or dispossess the Plaintiffs .   Therefore a permanent restraining order should issue to enjoin the eviction process.

**COUNT IV**
**FRAUDULENT MISREPRESENTATION**
as against Defendants Litton Loan Servicing, LP;  Mortgage Electronic Registration Systems, Inc. (MERS); Bank of New York

73. Plaintiffs reaffirm and reallege paragraphs 1-61 above as if set forth more fully hereinbelow.

74. The Defendants, each and every one, have participated in a Constructive or Malicious Fraud from the beginning of this transaction. From the inducement of the Plaintiffs to accept a predatory loan with terms and conditions that were destined to cause a default purportedly by the Plaintiffs, to transfers of the note and Deed which were not contemplated by the agreement or disclosed by the parties, to a securitization process which illegally uses and exploits the Plaintiffs' name and credit for the benefit of the Defendants. The Defendants, have participated in this scheme of unjust enrichment at the Plaintiffs' expense.

75. Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by Federal Statutes and Regulations to be disclosed to the Plaintiffs both before and at the closing.

76. The most important fact or evidence for proving misrepresentation are the Exhibits C and D. Exhibit C is a civil action filed by Defendant Bank of New York as Trustee as on 10 September 2007. The Para in the Civil action says that the Notice of Default was served upon Plaintiffs as on May 29, 2007. Whereas Exhibit D clearly shows that the assignment was made between Defendants Bank of New York and Defendant MERS as on August 21,2007.

Before even assignment, can a Bank act as a lender and initiate foreclosing procedure. Can they serve a notice of Default upon Borrowers? Does that possibly mean that every unknown party can initiate foreclosure procedure and for validating their act, MERS can later assign the DEED.

77. The Defendants also materially misrepresented material information to the Plaintiffs with full knowledge by that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made. RESPA letters were sent to every known defendant. But Defendant Litton Loan Servicing, LP hardly sent any details relating to assignment. They simply sent the copies of original deed between the borrower and Plaintiffs and stated that there is no error or fraud in the Deed. However, there was an assignment which shows that a Party (Defendant Bank of New York) has acted as a foreclosing lender without proper assignment.

78. Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious. They even failed to provide with the Plaintiffs proper notices as to assignment of the deed.

15

79. Plaintiffs, not being an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

80. Had the falsity of Defendants' representations known to the Plaintiffs, they would not have entered into the transactions the subject of this action.

81. As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiffs has suffered damages.

## COUNT V
## BREACH OF FIDUCIARY DUTY

as against Defendants The Bank of New York as Trustee, Litton Loan Servicing, LP

82. Plaintiffs reaffirm and reallege paragraphs 1-61 above as if set forth more fully hereinbelow.

83. A fiduciary relationship is one in which one party places trust and confidence in another ho thereby gains domination and superiority over the first party.

84. First Residential Mortgage  Network Inc, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiffs which was not only to be best suited to the Plaintiffs given their income and expenses but by which Plaintiffs would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Plaintiffs reposed trust and confidence, especially given that Plaintiffs were not and are not investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders. The Defendants failed to provide any information regarding assignment of the Deed despite several requests.

85. First Residential Mortgage Network Inc breached their fiduciary duties to the Plaintiffs by fraudulently inducing Plaintiffs to enter into a mortgage transaction which was contrary to the Plaintiffs' stated intentions; contrary to the Plaintiffs' interests; and contrary to the

16

Plaintiffs' preservation of their home. They even failed to provide with the Plaintiffs appropriate information regarding Assignment of Deed.

86. As a New trustee, Bank of America had a fiduciary duty to act in the most honest manner relating to the mortgage. Instead they initiated the foreclosure proceeding along with Litton Loan Servicing LP., by recording Notice of Default with the county recorder 2 months prior to the assignment.

87. As a result of the actions of First Residential Mortgage and Defendants who have since owned the loan, inter alia, the Plaintiffs contends that the assets the other Defendant's bought and now purport to exercise are hopelessly flawed and should be without force and effect. Further, the foreclosure procedure as initiated by the Defendant Litton Loan Servicing LP. And Bank of New York shall be deemed void.

88. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages.

89. Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiffs justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclinations.

## COUNT VI

### UNJUST ENRICHMENT

as against Defendants The Bank of New York as Trustee, Litton Loan Servicing, LP, Mortgage Electronic Registration Systems, Inc. (MERS),

90. Plaintiffs reallege and reaffirm paragraphs 1-61 above as if set forth more fully herein below.

17

91.  Defendants had an implied contract with the Plaintiffs to ensure that Plaintiffs understood all fees which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and to not charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiffs.

92.  Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees. rebates, kickbacks, profits (including but not limited to from resale of mortgages and notes using Plaintiffs' identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and YSP fee unrelated to the settlement services provided at closing.

93.  Defendants have been unjustly enriched at the expense of the Plaintiffs, and maintenance of the enrichment would be contrary to the rules and principles of equity.

94.  Defendants have also been additionally enriched through the receipt of PAYMENT from third parties including but not limited to investors, insurers, other borrowers, the United States Department of the Treasury, the United States Federal Reserve, and Bank of America, N.A.

95.  Plaintiffs thus demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees.

## COUNT VII

### CIVIL CONSPIRACY

as against Defendants The Bank of New York, Litton Loan Servicing, LP,  Mortgage Electronic Registration Systems, Inc. (MERS),

96.  Plaintiffs reaffirm and reallege paragraphs 1-61 above as if set forth more fully hereinbelow.

18

97. In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiffs.

98. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs.

99. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

100. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiffs have suffered damages.

101. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

## COUNT VIII

## COMPLAINT TO QUIET TITLE TO REAL PROPERTY

### as against Defendants Litton Loan Servicing, LP

102. Plaintiffs reaffirm and reallege paragraphs 1-61 above as set forth more fully herein below.

103. Plaintiffs has sent or has caused to be sent authorized Qualified Written Requests to the only known Defendant which the said Defendant have failed and refused to answer despite acknowledging receipt thereof and despite demands from counsel, a copy of which is attached hereto and made a part hereof as specifically as if set forth at length hereat.

104. Plaintiffs have sent or have caused to be sent notice of their intent to rescind the subject loan transaction but have only sent those notices to the only entities that have been disclosed. Hence, without this action, neither the rescission nor the reconveyance which the Plaintiffs are entitled to file (as attorney in fact for the originating lender) and will file contemporaneously with this complaint, gives Plaintiffs full and clear title to the property.

105. The real party in interest on the lender side may be the owner of the asset backed security issued by the SPV, the insurer through some claim of equitable interest, or the Federal government through the United States Department of the Treasury or the Federal Reserve. The security is a "securitized" bond deriving its value from the underlying mortgages of which the subject mortgage is one. Thus Plaintiffs is entitled to quiet title against Defendants, clearing title of the purported subject mortgage encumbrance.

106. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

107. Plaintiffs are informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

108. Plaintiffs are informed and believe and thereupon allege that and each of the Defendants claim or might claim an interest in the property adverse to Plaintiffs herein. However, the claim of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property.

109. Plaintiffs therefore seeks a declaration that the title to the subject property is vested in Plaintiffs alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiffs herein.

## COUNT IX

## USURY and FRAUD

**as against Defendants The Bank of New York as Trustee, Litton Loan Servicing, LP, Mortgage Electronic Registration System, Inc. (MERS),**

110. Plaintiffs reaffirm and reallege the above paragraphs 1-61 hereinabove as if set forth more fully hereinbelow. The subject loan, note, and mortgage was structured so as to create the appearance of a higher value of the real property than the actual fair market value.

111. Plaintiffs are informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

112. Defendants disguised the transaction to create the appearance of the lender being a properly chartered and registered financial institution authorized to do business and to enter into the subject transaction when in fact the real party in interest was not disclosed to Plaintiffs, as aforesaid, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme.

113. Said real party in interest, i.e., the source of funding for the loan and the person to whom the note was transmitted or eventually "assigned" was neither a financial institution nor an entity or person authorized, chartered or registered to do business in this State nor to act as banking, lending or other financial institution anywhere else.

114. As such, this fraudulent scheme, (which was in actuality a plan to trick the Plaintiffs into signing what would become a negotiable security used to sell unregulated securities under

21

fraudulent and changed terms from the original note) was in fact a sham to use Plaintiffs' interest in the real property to collect interest in excess of the legal rate.

115. The transaction involved a loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law. The "formula rate" referenced in those laws was exceeded by a factor in excess of 10 contrary to the applicable law and contrary to the requirements for disclosure under TILA and HOEPA.

116. Under Applicable law, the interest charged on this usurious mortgage prevents any collection or enforcement of principal or interest of the note, voids any security interest thereon, and entitles the Plaintiffs to recovery of all money or value paid to Defendants, plus treble damages, interest, and attorney fees.

117. Under Applicable Law Plaintiffs are also entitled and demand a permanent injunction be entered against the Defendants (a) preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious, as aforesaid (b) requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record, (c) allowing the filing of said order in the office of the clerk of the property records where the subject property, "Loan transaction" and any other documents relating to this transaction are located and (d) dissolving any lis pendens or notice of pendency relating to the Defendants purported claim.

## COUNT X

### ECONOMIC DURESS

as against Defendants The Bank of New York as Trustee, Litton Loan Servicing, LP and Bank of America

118. Plaintiffs reaffirm and reallege the above paragraphs 1-61 hereinabove as if set forth more fully hereinbelow.

119. As the Assignment of deed was made as on 21st August 2007 by MERS inc. to Bank Of New York the foreclosing procedure should have started after the deed was made.

120. Somehow, before even entering into agreement, Bank of New York knew 3 months in advance that they will be assign the deed and they can act as the lender serving upon Plaintiffs with Notice Of Default as on May 29,2007.

121. They initiated civil action upon the Plaintiffs without having the right. They acted as if they were the rightful lender at the time of sending notice of default, but the assignment of deed clearly shows that they owned the deed on 21 August 2007 and not 29 May,2009.

122. " State Nat'l Bank v. Farah Mfg. Co., 678 S.W.2d 661 (Tex. Ct. App. 1984).The court held the lender liable when it had the right to accelerate the loan in the event of a management change, and threatened to use that right in a way that rose to the level of economic duress".

123. The position of pro se party (Plaintiffs) cannot easily bear the expense of fighting litigation. They have worked very hard to maintain and build the property and any fraudulent action initiated by such a reputed corporation is indeed a very shameful act.

124. The Plaintiffs prays for appropriate damages and demand that the foreclosure proceeding initiated by the fraudulent syndicate of each defendant be deemed void.

### RELIEF SOUGHT

WHEREFORE, having set forth numerous legally sufficient causes of actions against the Defendants, Plaintiffs pray for the entry of Final Judgment against all Defendants jointly and severally in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial, and for costs and attorneys' fees; that the Court find that the transactions the subject of this action are illegal and are deemed void; that the foreclosure which was instituted be deemed and declared illegal and void and that further proceedings in connection with the foreclosure be enjoined; and for any other and further relief which is just and proper. The Plaintiffs further prays that the defendants be enjoined from the auction/trustee sale of the

property concerned, and a permanent injunction against lender may be granted to prevent the auction sale of the concerned property

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all matters so triable as a matter of right.

Respectfully submitted,

Dated: July 7, 2010

*Donald P. Lariviere  Doris G. Lariviere*

Donald P. Lariviere & Doris G. Lariviere,

# 3 Devotion Avenue

Sanford, Maine 04073

Plaintiffs Pro Se

24